SO ORDERED.

SIGNED this 17 day of February, 2012.

_____

**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

### UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### WILMINGTON DIVISION

IN RE:

GAIL MARIE GOODMAN,                                   CASE NO. 11-02760-8-JRL
                                                      CHAPTER 7

      DEBTOR.

_____

### ORDER GRANTING DEBTOR'S MOTION FOR TURNOVER

Before the court are the debtor's motion for turnover of Social Security Insurance ("SSI") benefits in the amount of $7,414.00, as well as a motion to confirm the offset filed by the United States Attorney for the Eastern District of North Carolina, on behalf of the Social Security Administration ("SSA"). A hearing on this matter was conducted in Wilmington, North Carolina on January 18, 2012.

On December 4, 2010, SSA notified Gail Marie Goodman (hereinafter "debtor") of its alleged overpayment of $33,775.00 in SSI benefits. Debtor was also notified that SSA waived collection of a portion, $22,190.00, of her $33,775.00 SSI benefits overpayment.[1] As a result of the waiver, she was only required to pay back $11,585 of the overpayment. The overpayment

_____

[1]SSA refused to waive collection of the entire overpayment because either or both of the following were not true: "[i]t was not your fault that you got too much Social Security money[]" or "[p]aying [SSA] back would mean you cannot pay your bills for food, clothing, housing, medical care, or other necessary expenses, or it would be unfair for some other reason."

arose from her prior disability claim for breast cancer.  Thereafter on February 15, 2011, the debtor received a billing statement stating that $11,585.00 was due for the previous overpayment.  On March 7, 2011, the debtor received a "Notice of Award" from the SSA awarding her monthly Social Security Disability ("SSD") benefits of $1,001.00 beginning March 2011.  The award letter also informed the debtor that she would receive her March 2011 SSD benefits in April 2011.  On March 15, 2011, the debtor was notified of SSA's decision on her request for reconsideration filed on the SSI claim dated April 16, 2010.  Pursuant to this decision, she was entitled to receive a monthly payment of $674.00 and retroactive SSI benefits from May 2010 through March 2011 totaling $7,414.00.  The SSA determined that the debtor met the medical requirements to receive SSI on February 17, 2011, and the non-medical requirements on March 15, 2011.   On March 24, 2011, SSA intercepted the debtor's $7,414.00 in retroactive SSI benefits, which it applied toward the $11,585.00 overpayment.  Without knowing of the offset, debtor reached an agreement on March 25, 2011, with the local SSA office in Wilmington to make monthly payments of $116.00 for 36 months in an honest effort to resolve the overpayment of SSI benefits.  As of the filing of her petition on April 7, 2011, the overpayment she owed to the SSA was $3,170.00.  The reduction in the overpayment reflects the offset taken by SSA of $7,414.00 on March 15, 2011.

On October 21, 2011, the debtor filed a Motion for Turnover against SSA seeking to recover $7,414.00 in retroactive SSI benefits seized by SSA.  The debtor contends that she is entitled to recover the full $7,414.00 setoff, because the "insufficiency" on the date of setoff was $3,170.00, which is less than the "insufficiency" on the date it first arose within the 90 days

proceeding the filing of the bankruptcy petition, $10,584.00.[2]

Section 553 of the Bankruptcy Code does not create the right to setoff or proscribe the methods by which a setoff becomes effective. Durham v. SMI Indus. Corp., 882 F.2d 881, 883 (4th Cir. 1989).  Rather, "the existence of the right, as well as the nature and essential validity of the obligations sought to be offset, will be determined in accordance with the law of the place where the operative facts transpired." 5 Collier on Bankruptcy ¶ 553.01[2] (16th ed. rev. 2011). Section 553(a) merely recognizes and preserves the right to setoff that exists under applicable state law where the following four conditions are met: (1) the creditor must hold a "claim" against the debtor that arose before the commencement of the bankruptcy case; (2) the creditor must owe a "debt" to the debtor that arose prior to the commencement of the bankruptcy case; (3) both the "claim" and the "debt" must be mutual; and (4) both the "claim" and the "debt" are each valid and enforceable.  11 U.S.C. § 553(a) (2006).  North Carolina recognizes the right to setoff where a mutual debt exists between the parties.  Durham, 882 F.2d at 883; In re Battery King Mfg. Co., Inc., 83 S.E.2d 490, 492 (N.C. 1954) (recognizing the requirements for setoff under North Carolina law).

However, Section 553(b) of the Bankruptcy Code places a limitation on the ability of creditors to exercise the right to setoff by providing as follows:

> (1) . . . if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of--
>   (A) 90 days before the date of the filing of the petition; and

---

[2]This amount reflects the difference between the overpayment owed to the SSA by the debtor ($11,585.00) and the March 2011 SSD benefits owed to the debtor by the SSA ($1,001.00).

> (B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

> (2) In this subsection, 'insufficiency' means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

11 U.S.C. § 553(b)(1); Comer v. U.S. Social Security Admin. (In re Comer), 386 B.R. 607, 610 (Bankr. W.D. Va. 2008). This limitation on the right to setoff expressly prohibits any creditor from improving its position within the ninety days prior to the filing of the bankruptcy petition. Lopes v. U.S. Dep't of Housing and Urban Dev. (In re Lopes), 211 B.R. 443, 449 (D.R.I.1997) (recognizing that the purpose of § 553(b) is to limit or curb creditors from exercising their right of setoff within 90 days prior to the commencement of a bankruptcy case); Butler v. United States (In re Butler), No. 96-4041, 1996 WL 33403850, at *5 (Bankr. S.D. Ga. Aug. 12, 1996) (unpublished) ("Congress enacted Section 553(b) to prevent creditors from improving their position and forcing an individual into bankruptcy."). Section 522(h) of the Bankruptcy Code allows the debtor to exercise the trustee's power to recover property improperly setoff under § 553(b) if such property could be exempted. 11 U.S.C. § 522(h).

The existence of an insufficiency presumes that there is a mutual debt between the parties. The test for determining the amount of insufficiency for purposes of setoff under § 553(b) is whether the "insufficiency on the date of . . . setoff is less than the insufficiency . . . 90 days before the date of the filing of the petition." 11 U.S.C. § 553(b)(2) (defining "insufficiency" as the amount by which the creditor's claim exceeds its debt); In re Assiante, 28 B.R. 903, 905 (Bankr. R.I. 1983). If there is no insufficiency on the ninetieth day prior to the bankruptcy filing, it is measured from the first day on which an insufficiency arises, but not before the commencement of the case. In re Assiante, 28 B.R. at 905. A creditor's improves its position if

the insufficiency on the ninetieth day prior to the filing of the petition or on the date it first arose, is greater than the insufficiency on the day any setoff was taken.  Id.

In this case, the debtor filed her Chapter 7 petition on April 7, 2011 and the ninetieth day prior to filing was January 6, 2011.  On January 6, 2011, the debtor owed SSA $11,585.00 in overpaid SSI benefits.  Because there was no mutual debt owing on the ninetieth day prior to the filing of the petition, no insufficiency existed on that date.   Where no mutual debt exists on the ninetieth day preceding the filing of the petition, the date on which a mutual debt first arose determines whether an insufficiency existed.  In this case, a mutual debt between the debtor and the SSA arose on March 7, 2011.  On the petition date, the amount of the insufficiency, after the $7,141.00 offset exercised by SSA on March 17, 2011, amounted to $3,170.00.[3]  Thus, SSA improved its position within the ninety days prior to filing by the amount of retroactive SSI benefits awarded to the debtor.  Because SSA's position was improved between the date the insufficiency arose and the date of setoff there is a basis for recovery under § 553(b).

SSA's reliance on Lee v. Schweiker, 739 F.2d 870 (3d Cir. 1984), is misplaced because the instant case is distinguishable.  In Lee, the Third Circuit Court of Appeals held that Social Security benefits accrued prior to the ninety-day period that were payable during the period were not used in calculating the insufficiency between the parties at the day of filing. 739 F.2d at 877 (holding that there was no improvement in position where SSA's obligation to pay benefits accrued outside the ninety-day period prior to bankruptcy and the insufficiency between the parties remained unchanged).  Here, SSA acknowledges that the debtor became eligible to

---

[3]This amount represented the difference between the debt owed to the SSA ($10,584.00) by the debtor and retroactive SSI benefits awarded to the debtor by SSA ($7,141.00) on March 15, 2011.

receive monthly SSD benefits on March 7, 2011 and retroactive SSI benefits on March 15, 2011, both of which fall within the ninety days prior to the filing of the debtor's petition.  Because the debtor filed for bankruptcy on April 7, 2011, these obligations accrued and SSA improved its position by decreasing the insufficiency within the ninety days preceding the filing.

The facts of the instant case are also distinguishable from Johnson v. Dept. of Housing & Urban Develop., AP No. S-06-00051-5-AP (Bankr. E.D.N.C. 2007).  In Johnson, the setoff of a pre-petition tax refund by the Internal Revenue Service (IRS) in favor of the Department of Housing & Urban Development (HUD)  within the ninety days preceding the filing was permissible because HUD's "position was not improved between the date of insufficiency first arose and the date of setoff . . . [leaving] no basis for recovery under § 553(b)." Id. at 4. (concluding that the insufficiency remained unchanged between the date it first arose and the date HUD exercised its right of setoff).  Here, SSA's position is clearly improved between the date the insufficiency first arose and the date SSA exercised its right to setoff.[4]   The insufficiency decreased from $ 10,584.00 to $ 3,170.00 and by intercepting the debtor's retroactive SSI benefits and applying them to the overpayment, SSA improved its position by $7,414.00 within the ninety days preceding the commencement of the bankruptcy case. Compare Comer, 386 B.R. at 609-10 (concluding that "there was no change in the 'insufficiency' because . . . the debt owed by the [d]ebtors to the SSA was $7,416.00 and the debt [SSA] owed to the debtors was $2,577.00 leaving the same insufficiency of $4,839.00).

---

[4]SSA exercised its right to setoff on March 24, 2011, which was after the date the insufficiency arose on March 7, 2011.

Based on the foregoing, SSA realized an improvement in its position that entitles the debtor to recover the $7,141.00 in retroactive SSI benefits seized by SSA under § 553(b).

**END OF DOCUMENT**